SCHOOL DISTRICT OF HATBORO–
HORSHAM, Appellant,

v.

Lamar ALEXANDER, Secretary,
Department of Education.

No. 91–5198.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 3, 1992.

Decided Dec. 22, 1992.

William A. Nelson, Washington, DC, for
appellant.

R. Craig Lawrence, Asst. U.S. Atty., with
whom Jay B. Stephens, U.S. Atty., John D.
Bates, and Marina U. Braswell, Asst. U.S.
Attys., Washington, DC, were on the brief,
for appellee.

Before SILBERMAN, BUCKLEY, and
D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit
Judge BUCKLEY.

BUCKLEY, Circuit Judge:

In 1975, the School District of Hatboro–
Horsham, Pennsylvania, applied for and be-
gan receiving "impact aid" from the De-
partment of Education. This assistance is
a federal subsidy paid to a school district to

compensate it for the loss of revenues resulting from the acquisition by the Federal Government of lands representing a significant portion of a district's tax base. In 1988, the Secretary of Education discovered that the original determination of Hatboro–Horsham's eligibility for such aid had been based on the tax assessment records for the year immediately following the acquisitions. On consulting the assessments in effect at the time the lands were acquired, the Secretary found that the School District did not qualify for impact aid. Because we agree with the Secretary's interpretation of the statute, we affirm the district court's order granting the Secretary's motion for summary judgment.

## I. BACKGROUND

On March 23, 1942, the United States condemned 576 acres of real property in the School District of Horsham in Montgomery County, Pennsylvania (now known as the School District of Hatboro–Horsham). As a consequence, nineteen individually owned tracts of land were removed from the District's tax base.

Congress subsequently adopted what has become known as the "Impact Aid Act." Pub.L. No. 81–874, 64 Stat. 1100 (1950) (*codified as amended at* 20 U.S.C. §§ 236–241 (1988)). Section 2 of the Act authorizes federal financial assistance for school districts that experience substantial and continuing burdens due to the United States's ownership of lands that had an assessed value, at the time of acquisition, equaling ten percent or more of the total assessed value of the district's real property, to wit:

Where the Secretary, after consultation with any local educational agency and with the appropriate State educational agency, determines ...

(1) that the United States owns Federal property in the school district of such local educational agency, and that such property ... (C) had an assessed value (determined as of the time or times when so acquired) aggregating 10 per centum or more of the assessed value of all real property in the school district (similarly determined as of the

time or times when such Federal property was so acquired); and

(2) that such acquisition has placed a substantial and continuing financial burden on such agency; ...

then the local educational agency shall be entitled to receive for such fiscal year such amount as, in the judgment of the Secretary, is equal to the continuing Federal responsibility for the additional financial burden with respect to current expenditures placed on such agency by such acquisition of property.

20 U.S.C. § 237(a) (1988).

The Hatboro–Horsham School District first applied for impact aid in 1975. At the time, the District sent the Department of Education a copy of the Montgomery County Tax–Exempt Real Estate Return for the year 1943, which placed an assessed value of $300,000 on the Federal Government's newly acquired 576–acre tract. Because that figure represented more than fifteen percent of the total assessed value of real estate in the District, the Department approved its application.

In 1988, the Department reviewed the District's application for impact aid for fiscal year 1986. At that time, the Department asked the District for the records of assessments for the nineteen individual tracts prior to their acquisition by the United States, and was provided with the requested information as recorded on the assessment rolls dated January 1, 1942. Based on this information, the Department determined that at the time of acquisition, March 23, 1942, the assessed values of the nineteen properties aggregated $113,000. Because this figure represented less than ten percent of the total assessments on the 1942 list, the Department reversed its prior determination of eligibility.

The Administrative Law Judge upheld the Department's determination. *See* Initial Decision, *In re:* Hatboro–Horsham School District of Pennsylvania (Aug. 28, 1989), *reprinted in* Joint Appendix ("J.A.") at 4. By refusing to review that decision, the Secretary adopted it as his own. *See* 34 C.F.R. § 218.8 (1992). The parties filed cross-motions for summary judgment be-

fore the district court. Judge Harris granted the Department's motion for summary judgment and denied the District's motion. *See School District of Hatboro–Horsham v. Cavazos*, No. 89-3161 (D.D.C. May 13, 1991).

The School District asks this court to reverse the Department's finding of noneligibility and to remand the proceeding to the Secretary "for a determination of the amount of entitlement due [the] School District under the statute."

## II. DISCUSSION

### A. Standard of Review

 In reviewing a summary judgment order, we do not defer to the district court's assessment of the evidence; rather, we make a *de novo* determination based on the record. *See Elcon Enterprises, Inc. v. WMATA*, 977 F.2d 1472, 1478 (D.C.Cir. 1992). In reviewing the Department of Education's application of the statute, we follow the rules laid down in *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). These require that we first determine whether "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. In making this determination, we look to "the particular statutory language at issue, as well as the language and design of the statute as a whole." *Chemical Mfrs. Ass'n v. EPA*, 919 F.2d 158, 162 (D.C.Cir. 1990) (internal quotation marks omitted). If we find that Congress has spoken to the precise question, as we do, that is the end of the matter. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781.

 The District argues that *Chevron* is not applicable because, in its view, this case turns on an interpretation of state rather than federal law. The District also maintains that because the Act is remedial, general principles of statutory construction require that it be read liberally in the District's favor. Both arguments founder on the unambiguous meaning of the Act's language: First, the determination of the assessed value of an acquired property does not depend on state law; second, the principle of statutory construction on which the District relies only applies where there is an ambiguity to be resolved. *See King v. Dole*, 782 F.2d 274, 276 (D.C.Cir.1986).

### B. The Impact Aid Act

This controversy centers on which of two figures—$113,000 or $300,000—represents the "assessed value" of the 1942 acquisitions within the meaning of section 2(a)(1)(C) of the Act. If it is the former, which is the aggregate of the assessed values of the nineteen individual properties acquired by the United States as recorded on the 1942 Real Estate Assessment Return of Montgomery County, the District does not qualify for impact aid. If it is the latter, which appeared as the assessed value of the 576–acre Federal tract as recorded in the 1943 assessment rolls, the District does qualify. The precise question at issue, then, is whether, under the Act, the assessed value of the property at the time of acquisition is "to be determined" by consulting the assessment records available on the date of the transfer of title (as the Secretary maintains) or by actually reassessing the property (as the District argues).

 Section 2(a)(1) requires that the Secretary determine, *inter alia*, whether

the United States owns Federal property in the school district ... and [whether] such property ... had an assessed value (determined as of the time or times when so acquired) aggregating 10 per centum or more of the assessed value of all real property in the school district (similarly determined as of the time or times when such Federal property was so acquired)....

20 U.S.C. § 237(a)(1). It is the School District's position that this language must be read in the context of the relevant state law. The District notes that, with certain exceptions, Pennsylvania requires that the assessments of properties be updated only every third year, and that the valuations shown for the nineteen parcels in the 1942 rolls were made in 1939. Pennsylvania law required, however, that these parcels be

reassessed upon their transfer to the United States, which the county assessor proceeded to do. The District maintains that the resulting reassessment of $300,000, which was first recorded in 1943, constitutes the contemporaneous "assessed value" that the Secretary must use for purposes of determining the District's eligibility under the Act. The Secretary, on the other hand, maintains that because section 2(a)(1)(C) requires that the assessed values of both the acquired property and all the property within a school district be determined "as of the time or times when such Federal property was so acquired," the values referred to in the section are of necessity the ones of record on the date or dates of acquisition.

We agree with the Secretary. In the first place, this construction has the virtue of giving the statutory language its ordinary meaning. As generally understood, the assessed value of a particular property is that which appears on the current tax assessment rolls. Furthermore, the reassessment value determined after the acquisition could never be the assessed value of the property "at the time" of the acquisition.

Second, the Secretary's reading conforms with the purpose and structure of the Act. In section 1, Congress stated its intention to provide financial assistance

> for those local educational agencies upon which the United States has placed financial burdens by reason of the fact that ... the revenues available to such agencies from local sources have been reduced as the result of the acquisition of real property by the United States....

20 U.S.C. § 236(a)(1). In the following section, Congress established a threshold test for determining a school district's eligibility for such assistance. *See id.* § 237(a)(1)(C). Specifically, a showing was required that the assessed value of the property acquired by the United States represented ten percent or more of the total assessed value of the district's real property *at the time of acquisition.*

The structure of the Act dictates that such determination can only be made by consulting the assessment rolls then of record. The values attributable to the acquired properties must be compared with the total value "of all property in the school district (*similarly determined as of the time or times when such Federal property was so acquired*)." *Id.* (emphasis added). Under the logic of the District's position, Congress intended to require a district-wide reassessment at the time of transfer. The District's formulation would compare the value of the acquired properties at the time of the acquisition to the value of all the District's property at the same time only if the Montgomery County assessor reassessed the remainder of the real property within the District as of March 23, 1942. Otherwise, Congress would be requiring that apples be compared with oranges. Such a construction is inherently implausible.

We acknowledge that, taken in isolation, the word "determined" in the first parenthetical clause in section 2(a)(1)(C) ("determined as of the time or times when so acquired") could refer to a revaluation made by an assessor rather than to an examination by the Secretary of the existing assessment rolls. But, as indicated above, the former reading is rendered wholly implausible because of the parallel requirement that a similar determination be made of the assessed value of the balance of the real property in the school district "as of the time or times" that the federal property was acquired. We note as well that a post-acquisition reassessment could never constitute the assessed value "at the time" of the acquisition.

### III. Conclusion

We conclude that the statute speaks directly to the precise question at issue. Under the Impact Aid Act, the assessed values to be used in determining whether a school district is eligible for aid are those recorded in the assessment rolls in existence at the time or times that the United States acquired property within the district. Because the Secretary relied on the proper assessed values in finding the Hatboro–Horsham School District ineligible for im-

pact aid, we affirm the district court's grant of summary judgment.

*So ordered.*