Edmund A. FAIRHEAD, Plaintiff,

v.

DELEUW, CATHER & COMPANY, Defendant.

Civ. A. No. 89–970 SSH.

United States District Court, District of Columbia.

March 25, 1993.

Edmund A. Fairhead, pro se.

James Lockwood, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This case now is before this Court on remand from the Court of Appeals. It has acquired importance beyond its own merits, in that it presents a significant difference between the beliefs of a panel of the appellate court and this Court as to one aspect of how a civil case properly proceeds through the Article III court system. The undersigned respectfully believes that a panel of the Court of Appeals has acted in a manner that is contrary to the federal rules, and feels that the issue presented by that action should be discussed for the benefit of civil litigants and the future functioning of both courts.

### The Background of the Case[1]

The complaint in this case was filed on April 10, 1989. Following discovery, defen-

---

1. In describing the posture of this case, an effort has been made to avoid duplication of what already has been filed in either or both courts,

dant moved for summary judgment on August 23, 1989. That motion was opposed by plaintiff on September 5, 1989. A reply memorandum was filed on September 15, 1989, and a supplement thereto was filed on October 10, 1989.

On April 17, 1991, the undersigned decided this case. In what was then, and still is, firmly believed to be fully authorized by Rule 52(a) of the Federal Rules of Civil Procedure, an Order was released that stated:

> This matter is before the Court on defendant's motion for summary judgment. Upon consideration of the motion, plaintiff's opposition thereto, and the entire record herein, the Court concludes that plaintiff has failed to demonstrate that there is a genuine issue of fact for trial pursuant to Federal Rule of Civil Procedure 56(a). Accordingly, it hereby is
>
> ORDERED, that defendant's motion for summary judgment is granted, and the case is dismissed. [*Fairhead v. Deleuw, Cather & Co.*, No. 89–970 (D.D.C. filed Apr. 17, 1991).][2]

Plaintiff appealed that ruling. In briefing the case, while acknowledging the existence of Rule 52(a), plaintiff did, as part of his argument, complain that this Court had not written an opinion. On April 2, 1992, nearly a year after this Court had decided the case, the Court of Appeals remanded it. That court's Order stated in part:

> Absent a statement of reasons from the district court explaining its summary judgment ruling, this court is unable to resolve this appeal. It is
>
> **FURTHER ORDERED,** that the district court, within thirty days of the date of this order, enter findings of fact and conclusions of law with regard to its April 17, 1991 order granting defendant's motion for

summary judgment. [*Fairhead v. Deleuw, Cather & Co.*, No. 91–7079 (D.C.Cir. filed Apr. 2, 1992).][3]

That Order was puzzling to the undersigned in several respects. First, if the undersigned, with the assistance of a law clerk, was "able" to decide the case, it is unclear why three experienced appellate judges, with their extensive law clerk and Staff Counsel's Office support resources, were "unable" to decide it, having not only the complete record which had been before this Court but also the addition of three appellate briefs. Second, Rule 52(a) specifically provides, without exception, that "[f]indings of fact and conclusions of law are unnecessary on decisions of [summary judgment] motions...." Fed.R.Civ.P. 52(a). Third, given the undersigned's overwhelming caseload and the passage of time, one result of which was that the law clerk who originally had analyzed the entire case had long since completed her clerkship (requiring a new law clerk to repeat the same work), it was extraordinary that three Article III judges would order another Article III judge to produce "findings of fact and conclusions of law" within 30 days.

The undersigned would have liked to convey these concerns informally, judge to judge. However, the undersigned believes that this court should not communicate with the Court of Appeals on a pending appeal without making such communication known to the parties. Accordingly, when the undersigned wrote a letter dated May 5, 1992, to the members of the panel of the Court of Appeals, it was deemed necessary to serve the parties and make that letter a matter of record.[4]

---

while at the same time making this Opinion self-contained.

**2.** Implicit in the Court's ruling, of course, was its conclusion "that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). That language was not included in the Order.

**3.** There is somewhat of an anomaly in the use of the term "findings of fact" in both that Order and in Rule 52(a). Of course, if there is a genu-

ine issue of material fact (which could be resolved only by a trial), the granting of a motion for summary judgment would be inappropriate.

**4.** In the meantime, counsel for the parties had contacted this Court's personal staff and offered to make any further written submissions which might be useful, including a joint statement of findings of fact. The undersigned declined that gracious offer, for the remand would require studying the entire record anew in any event.

# 155

On May 8, 1992, the panel issued the following Order:

It is **ORDERED,** on the court's own motion, that its order issued April 2, 1992, be vacated. It is

**FURTHER ORDERED,** on the court's own motion, that the record in this case be remanded to the United States District Court for the District of Columbia for a statement of reasons explaining its summary judgment ruling. The district court shall return the record to this court, with a statement of its reasons, as expeditiously as its docket permits. [*Fairhead v. Deleuw, Cather & Co.,* No. 91–7079 (D.C.Cir. filed May 8, 1992).]

Plaintiff's able counsel, whose extensive practice before the District Court surely has made him aware of the demands upon the time of its judges, then obviously realized that the remand was likely to result in extensive further delay. On May 12, 1992, he filed with the Court of Appeals a Motion for Oral Argument. It stated in pertinent part:

Moreover, permitting the parties to present oral argument of this appeal will assist this Court in clarifying the reasons for the District Court's summary judgment Order of April 17, 1991 and it will make it unnecessary for the District Court to take time from its busy docket to again analyze the multiple facts presented by this case in order to comply with this Court's Order of May 5, 1992.

In addition, while appellant recognizes that he argued in his brief that the District Court should be required to explain the reasons for granting summary judgment in this case, appellant believes that his interests will best be served in this appeal and the dictates of justice will be equally met if this Court permits the parties to present oral argument at the earliest available opportunity in order that this Court can determine if written Findings of Fact and Conclusions of Law from the District Court are indeed necessary for the disposition of this appeal.

Put simply, counsel thus asked the panel to decide the case on the existing record, which clearly is contemplated by the relevant language of Rule 52(a). The Court of Appeals was unpersuaded, and seemingly adhered to its position that it was "unable" to decide the appeal without forcing this Court to write an opinion. On June 15, 1992, the Court of Appeals issued an Order which stated in part:

Upon consideration of the motion for oral argument, it is

**ORDERED** that the motion be denied without prejudice. This court will not proceed with consideration of this appeal until the district court completes the proceedings on remand. [*Fairhead v. Deleuw, Cather & Co.,* No. 91–7079 (D.C.Cir. filed June 15, 1992).]

### The Federal Rules of Civil Procedure

■ All "inferior Courts" created under Article III of the Constitution are ones of limited jurisdiction; essentially their powers are those which are conferred upon them by Congress. All Article III courts are bound by the Federal Rules of Civil Procedure. Those rules have the effect of law, and it is respectfully submitted that United States Circuit Judges are as obliged to follow them as United States District Judges are entitled to rely upon them.

There is nothing mysterious about what trial judges are, and are not, required to do with respect to findings and conclusions in civil cases. For example, Rule 65(d) of the Federal Rules of Civil Procedure provides in pertinent part:

(d) **Form and Scope of Injunction or Restraining Order.** Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained, . . . . [Fed. R.Civ.P. 65(d).]

And, if a member of this court conducts a non-jury civil trial, the court is obliged to "find the facts specially and state separately its conclusions of law thereon . . . ." Fed. R.Civ.P. 52(a). Thus, what trial judges are required to do is quite specific. Equally specific is what they are not required to do. The portion of Rule 52(a) relating to sum-

mary judgment states unambiguously: "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 [judgment on the pleadings] or 56 [summary judgment] or any other motion except as provided in Rule 41(b) [involuntary dismissal]." Fed.R.Civ.P. 52(a). The rule is unqualified; it does not say that findings and conclusions (by whatever name) are unnecessary unless, as is purportedly the case here, the Court of Appeals is "unable" to decide the case without them; the rule simply states that they are unnecessary—period.

◼ Nor is there anything obscure as to the reasons for the rule. First, the standard of review on appeal of summary judgment decisions is *de novo*. Second, it is axiomatic that a trial judge may be "right" for the "wrong" reason. *See, e.g., Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). Thus, although trial judges seriously consider such motions, the quality or content of their analysis of the issues is immaterial to appellate review of the ultimate decision reached.[5] As another panel of the Court of Appeals recently (and correctly) stated in *Doe v. Gates,* 981 F.2d 1316 (D.C.Cir.1993):

> In reviewing summary judgment decisions, we decide *de novo* the same question that was before the District Court. That is, we must determine whether there is on the record "no genuine issue as to any material fact." Fed.R.Civ.Pro.Rule 56(c). If so, then we determine whether "the moving party is entitled to judgment as a matter of law." *Id.* Therefore, with the full record before us as it was before the District Court, we may make that determination on grounds which differ from those upon which the District Court relied. [*Id.* at 1322 (citations omitted).]

In one recent opinion, another member of the appellate panel in this case essentially espoused the belief that whether Rule 52(a) is to be followed is just a matter of the preference of the Court of Appeals. In *Na-*

*tional Coal Association v. Lujan,* 979 F.2d 1548 (D.C.Cir.1992), it was stated:

> [Appellants] acknowledge that a remand for district court explanation of its summary judgment is not dictated by law. *See* Fed.R.Civ.P. 52(a) (stating that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule ... 56"). Nevertheless, [they] urge the large and practical importance to litigants and this court of explicitly reasoned decisionmaking in the court of first instance. A responsible accounting for its decision by the district court, we agree, informs both the litigants and this court; such an accounting serves the twin objectives of fairness to the parties and judicial economy. Our federal court system works best when the courts that form the foundation of the system give to the litigants and to the judges next in line the full benefit of their analysis . . . . .
>
> In this case, however, several considerations lead us to resist a remand. The issues presented are few and clearly defined; the case has been well briefed and argued; it is our obligation to review the administrative record de novo, and here that record is not dense. [*Id.* at 1552–53 (citations omitted).]

That panel may well believe that various benefits might flow from trial judges' writing opinions in decisions on every motion for summary judgment. However, quite clearly, the law does not require it. This brings the undersigned, with some reluctance, to what may really be happening here. One possible benefit (or convenience) to the Court of Appeals, not expressed in the *National Coal Association* decision, is found illustratively in the Court of Appeals' Judgment in *Industrial Bank of Washington v. Techmatics Technologies, Inc.,* 955 F.2d 764 (D.C.Cir.1992) (unpublished). There another panel of the Court of Appeals stated:

> This case was considered on the record from the United States District Court for

---

5. In *School District of Hatboro–Horsham v. Alexander,* 981 F.2d 1265 (D.C.Cir.1992), authored by one member of the panel in this case, it was stated quite simply as follows:

> In reviewing a summary judgment order, we do not defer to the district court's assessment of the evidence; rather, we make a *de novo* determination based on the record. [*Id.* at 1267.]

the District of Columbia and on briefs and oral argument presented by the parties. After full review of the issues presented, the court concludes that appropriate disposition of the appeal does not warrant an opinion. *See* D.C.Cir.Rule 14(c). For substantially the reasons stated by Judge Harris in his opinion below, *see Industrial Bank of Washington v. Techmatics Technologies, Inc.,* 763 F.Supp. 629 (D.D.C. 1991), it is

**ORDERED and ADJUDGED** that the judgment from which this appeal has been taken be affirmed. [*Id.,* No. 92–5142, 1992 WL 38616, 1992 U.S.App.LEXIS 2771 (D.C.Cir. Feb. 25, 1992) (unpublished).]

The undersigned will let that language speak for itself, but respectfully suggests that if any members of the Court of Appeals believe that an opinion should be written every time a trial judge decides a motion for summary judgment, then the proper approach would be for them to seek amendment of the Federal Rules of Civil Procedure as provided by statute. *See* 28 U.S.C.A. §§ 2072–76.

Every United States Circuit Judge and every United States District Judge takes an oath to support and defend the laws of the United States. The Federal Rules of Civil Procedure are part of those laws. It is respectfully suggested that there is no valid basis for the panel to do what it has done here, which in effect is to say to this Court that "we don't want Rule 52(a) to apply to this case, so write us an opinion."

*Findings and Conclusions = Opinion = Reasons*

In something as important as the Court of Appeals' refusal to apply the controlling Federal Rule of Civil Procedure to this case, it further is respectfully suggested that no se-

mantic exercise should be engaged in as to what is being done. As noted, Rule 52(a) unequivocally makes unnecessary "findings of fact and conclusions of law" in ruling on motions for summary judgment. That term assuredly encompasses "reasons" as well. In the panel's first Order in this case, dated April 2, 1992, it obviously treated the terms "statement of reasons" and "findings of fact and conclusions of law" as synonymous. After the undersigned wrote his letter dated May 5, 1992, to the panel expressing the view that the Court of Appeals' prior Order was "without a valid legal basis" because of Rule 52(a), a new Order, dated May 8, 1992, was issued directing this Court to issue "a statement of reasons explaining its summary judgment ruling." That minor change in phraseology does not alter the validity of the request. "Findings of fact and conclusions of law" frequently are written in a narrative opinion form, as would be "a statement of reasons explaining [a] summary judgment ruling."

Producing an opinion in compliance with the Order, as this Court feels it must, may not seem to the Court of Appeals to be an unduly onerous burden. However, it must be put in the context of the undersigned's overall docket. This case was, and now is again, one of hundreds of cases on his individual docket.[6] However large, mere numbers alone do not reveal the true magnitude of the caseload. Although criminal cases, at any moment in time, number less than ten percent of the total of pending civil cases, those cases place inordinate demands on the Court's time.[7] Compounding these problems, due in part to a shortage of judges on this court, is the fact that the caseloads of individual judges continue to expand.[8]

---

6. Necessarily every hour spent on one case means that one hour cannot be spent on any of the other cases.

7. Criminal cases, driven relentlessly by many factors, such as the Speedy Trial Act, and including a ceaseless flow of drug cases, do not simply require the judge's presiding over trials that lead to verdicts. There also are, illustratively, arraignments, detention hearings, hearings on motions such as motions to suppress, work on jury instructions, sentencing hearings, hearings on the revocation of probation or supervised release,

and, perhaps most frustrating of all, mistrials— cases in which much time is expended only to have a deliberating jury be unable to reach a verdict. (Mistrials, of course, do not go to the Court of Appeals, but they typically require the retrial of the case.)

8. For many months, there have been several vacancies on this court, now totalling four, placing an added burden on each judge with respect to the handling of all cases, and particularly criminal cases. Were it not for the dedicated efforts of a handful of judges who have taken senior

Two other factors, which are related, should be mentioned. The first is resources. Each District Judge is allowed two law clerks; no "court" or "staff" attorneys exist to aid in the processing of cases (with the exception of. a single new attorney whose goal is to aid in handling our *pro se* civil cases). By contrast, each Circuit Judge has three or four personal law clerks, as well as two colleagues assigned to each case, and the Court of Appeals has a Staff Counsel's Office which now includes roughly 13 lawyers.[9]

The second factor had curious timing in this case. Shortly before the undersigned issued his Order ruling on the summary judgment motion, he had consciously decided, and so instructed his clerks, that more use must be made of the subject provision of Rule 52(a). In light of his overwhelming caseload, and his desire to provide civil litigants with decisions on their cases, the undersigned believed, and still does, that he simply does not have, and cannot take, the time to write an opinion on every summary judgment motion. In many cases, justice is better served if the Court resolves summary judgment motions without avoidable delay as soon as the Court is fully satisfied with the result that it believes to be correct, even if that means doing so without an opinion.

### Conclusion

The undersigned, like most trial judges with full calendars, is genuinely frustrated at his inability to devote as much time as he would like to his civil docket. Litigants in civil cases typically are people who are deeply embroiled in their cases, both financially and emotionally. If anything, this Court probably writes opinions in too many cases. If some cases are not resolved summarily, as is specifically provided for with respect to

motions for summary judgment by Rule 52(a), the backlog and its attendant delays would be even worse.[10]

Great care was taken by the undersigned in considering this case. Memory dims, but obviously it was concluded that the delay already had been extensive, that further delays should be obviated, and that the case should be resolved without writing an opinion—in part because of Rule 52(a) and in part because the Court of Appeals' standard of review is *de novo*, irrespective of whatever the undersigned may have written.

■ Nonetheless, in what the undersigned respectfully considers to be in direct disregard of Rule 52(a), the panel elected to remand the case, causing extensive expenditures of time by the undersigned and his staff and resulting in extensive further delays.[11] Although this Court believes that the Court of Appeals has no valid legal basis for its Order, it nonetheless recognizes that hierarchically this is an inferior court and that it is bound by the panel's ruling. Accordingly, attached hereto as Appendix A are the Court's Statement of Reasons (and Findings of Fact and Conclusions of Law) On Remand.

### APPENDIX A

### STATEMENT OF REASONS (AND FINDINGS OF FACT AND CONCLUSIONS OF LAW) ON REMAND

On April 17, 1991, this Court granted summary judgment for defendant. Finding that no explanation was necessary, the Court did not elaborate on its decision. *See* Fed. R.Civ.P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56.") Nevertheless, on April 6, 1992, the Court of Appeals, stating that "[a]bsent a statement of reasons

---

status but who continue to be of enormous assistance to the court, our situation literally would be desperate.

9. Also, obviously, appellate judges spend vastly less time on the bench than trial judges; for trial judges, time in chambers is precious indeed.

10. The human dimension of delay cannot be overstated. On December 19, 1992, plaintiff (and appellant) wrote a personal letter to the members of the panel of the Court of Appeals

which poignantly expresses the frustration he has felt personally. That letter was transmitted to this Court by the Court of Appeals' Chief Staff Counsel on February 17, 1993. A copy of it is attached as Appendix B.

11. Intervening for the undersigned between the remand and the issuance of this Opinion, among many other things, was one criminal trial which began in late September 1992 and was not concluded until January 1993.

from the district court explaining its summary judgment ruling, [it] is unable to resolve this appeal," directed this Court to enter findings of facts and conclusions of law within 30 days of the date of that Order. Thereafter, on May 8, 1992, the Court of Appeals vacated its previous order and remanded the record in this case to this Court to be returned "with a statement of its reasons, as expeditiously as its docket permits." Although the Court finds no practical difference between what the two Orders request, and for the reasons expressed in the preceding Opinion believes there is no valid legal basis for such an order, the Court nonetheless submits the following pursuant to the Order of May 8, 1992.

Plaintiff was the Manager of Marketing Development, International Region, at Deleuw, Cather & Company. Defendant informed plaintiff that he would be terminated effective October 31, 1988. The company transferred Rodney Eggleston to replace plaintiff. When plaintiff raised the issue of possible age discrimination, defendant retained him on the payroll with no loss of pay or benefits while it pursued other employment options for him. Plaintiff rejected the options proposed by defendant and requested his former position, salary, and benefits. By letter dated November 17, 1988, plaintiff's counsel notified defendant's counsel that:

> Mr. Fairhead would like to assume his old position of Manager of International Market Development at his former salary of $60,361.00 . . . . We understand that this may cause some dislocation within the company, and in particular will require the company to relocate Mr. Eggleston, who was the younger employee who was elevated to Mr. Fairhead's position. (Fairhead Deposition, Ex. 8.)

By letter of November 22, 1988, defendant agreed to this request:

> Deleuw, Cather & Company has decided to accept Mr. Fairhead's proposal to return to employment with the Company in his prior position of Manager of International

Market Development at his former salary of $60,361.00 . . . . [W]e do note the fortunate fact that expected increases in work will obviate any need to relocate Mr. Eggleston. His retention will not, however, alter Mr. Fairhead's responsibilities or reporting relationships. (Fairhead Deposition, Ex. 9).

Nevertheless, plaintiff rejected this offer of reinstatement and brought this suit, alleging age discrimination under the Age Discrimination in Employment Act (ADEA).

 The above facts are not in dispute. The only question for the Court is whether plaintiff's rejection of this offer is fatal to his claim under the ADEA. The Court finds that it is.

In his opposition to defendant's summary judgment motion, plaintiff asserts that defendant's conduct creates a genuine issue of material fact as to whether the reinstatement offer was made in good faith and, therefore, whether it was complete relief. The Court disagrees and finds that no genuine issue of material fact exists. Defendant's offer to plaintiff of his former position specifically stated that his responsibilities would remain the same. While defendant's conduct prior to this offer might have been imperfect from a legal standpoint, no evidence in the record supports plaintiff's argument that the final offer of reinstatement was not made in good faith.[1] In his deposition, plaintiff listed nine reasons for not accepting defendant's offer, several of which deal with Eggleston's retention. Plaintiff's unsupported beliefs that defendant did not intend to fulfill its offer do not save his claim. *See Giandonato v. Sybron Corp.*, 804 F.2d 120, 122 (10th Cir.1986) (and cases cited therein). If plaintiff's contentions could save his claim, then no defendant could ever cure a potentially discriminatory employment action without being subjected to litigation. This is clearly not the intent of employment anti-discrimination laws such as the ADEA. *Cf. Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982) ("[T]he legal rules fashioned to implement Title VII

---

1. The only facts he has to argue in support of a finding of bad faith were prior to the full reinstatement offer. As the Court notes *infra,* this is insufficient to survive the summary judgment motion. If it were otherwise, a defendant would be unable to cure allegedly illegal acts.

should be designed ... to encourage ... defendants promptly to make curative, unconditional job offers ..., thereby bringing defendants into "voluntary compliance" and ending discrimination far more quickly than could litigation."); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974) (stating that cooperation, voluntary compliance, and conciliation without litigation are "the preferred means" of achieving the goals of the anti-discrimination laws).

■ Defendant's offer constituted full relief. Had plaintiff accepted it, he would have suffered no loss of title, pay, benefits, or seniority.[2] Defendant offered plaintiff all that he would be entitled to if he were successful in this suit.[3] Therefore, defendant's offer mooted plaintiff's claim, eliminating any claim he otherwise may have had.[4] *See Giandonato*, 804 F.2d at 125. In the alternative, it negates his prima facie case. *Cf. Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073, 1077–79 (2d Cir.1990) (holding that rejection of offer of full relief during administrative process requires abandonment of claim), *cert. denied,* —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991).

■ In addition, and in the alternative, plaintiff had a duty to mitigate damages. *See Ford Motor Co.*, 458 U.S. at 230, 102 S.Ct. at 3065. His refusal to accept reinstatement to what was clearly a "substantially equivalent" job breached this duty. *See id.* at 231–32, 102 S.Ct. at 3065–66. Accordingly, plaintiff's backpay damages would be tolled as of the date of refusal. *See id.* at

400, 102 S.Ct. at 3070. Theoretically, he would still be entitled to other damages, such as prior back pay and loss of seniority. *See id.* As of the date of the offer, however, plaintiff had suffered no such prior damages and defendant's offer included maintaining his previous seniority status. Thus, if plaintiff had fulfilled his duty to mitigate, he would have suffered no recoverable damages. Therefore, even if plaintiff states a viable claim, he is entitled to no damages.

Accordingly, as this Court originally concluded and ordered on April 17, 1991, upon renewed consideration of the motion, plaintiff's opposition thereto, and the entire record herein, the Court concludes that "there is no genuine issue as to any material fact and that the moving party [defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Accordingly, it hereby is

ORDERED, again, that defendant's motion for summary judgment is granted, and the case is dismissed.

SO ORDERED.

/s/ Stanley S. Harris
 Stanley S. Harris
 United States District Judge

Date: MAR 25, 1993

## APPENDIX B

3100 Holmes Run Road
Falls Church VA 22042

Tel: (703) 237–6770

December 19, 1992

Hon. Abner J. Mikva

Hon. Ruth Bader Ginsburg

---

2. Although plaintiff also requests liquidated damages, there is no evidence that defendant "willfully" violated the ADEA by recklessly disregarding the requirements of the statute. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–29, 105 S.Ct. 613, 624–26, 83 L.Ed.2d 523 (1985); *EEOC v. District of Columbia Dep't of Human Services*, 729 F.Supp. 907, 916–17 (D.D.C.1990) (noting various Courts of Appeals' interpretations of the *Thurston* standard), *vacated,* 925 F.2d 488 (D.C.Cir.1991). Therefore, plaintiff is not entitled to liquidated damages under 29 U.S.C. § 626(b). In addition, since the Court concludes plaintiff would have suffered no damages, *see infra*, double damages would still leave him with no monetary recovery.

3. If there were to have been a trial, and if plaintiff were to prevail, the Court could not require defendant to remove Eggleston from plaintiff's department, but only to remove him from plaintiff's position and to reinstate plaintiff to his former job with its attendant responsibilities. This is precisely what defendant offered plaintiff.

4. Or, in the alternative, plaintiff's claim is not ripe. If plaintiff accepted defendant's offer and then his worst fears were realized, perhaps then he might have a claim for relief.

Hon. James L. Buckley
United States Court of Appeals for
The District of Columbia Circuit.

Re: *Fairhead vs. DeLeuw Cather & Co*

D.C.Cir. No. 91–7079

[D.D.C.Civil Action No. 80–970]

Sir:

In May 1989 the above referenced "Age Discrimination in Employment Act" case was filed with the U.S. District Court, before Judge Harris. The actions complained of occurred in October 1988.

On April 17, 1991, two years after receiving the case, Judge Harris granted the defendant a Summary Judgment, giving no reasons for his decision except to say that there was no issue of material fact.

The judgement was appealed and on April 2, 1992 the United States Court of Appeals issued an order that the District Court enter a "Findings of Fact and Conclusions of Law" with regard to the summary judgement and to comply within thirty days of such order.

Judge Harris then wrote to the Court of Appeals on May 5, 1992 stating that, because of the District Court's heavy criminal docket, he was unable to comply within the specified time frame. The Court of Appeals then issued a further order rescinding the previous order but directing that a statement of reasons should be prepared by Judge Harris as expeditiously as the Court's schedule would permit.

As nothing further has been heard from the lower court, it seems doubtful that any of the witnesses would be able to recall any of the facts with certainty after such an extended delay, should the case ever be ordered to be tried.

Can nothing be done to resolve this case, or are we all held hostage to the flood of criminal cases that swamp our judicial system? I realize that as an appellant, I am probably not supposed to write to you, but as a citizen of the Republic I am aghast at the intolerable delay to which civil actions are subjected. Does the phrase "And Justice for All" in the Pledge of Allegiance, really mean after about four years or so, depending upon a Judge's workload?

Yours truly,

/s/ Edmund A. Fairhead
Edmund A. Fairhead