Lawrence D. MUNGIN, Plaintiff,

v.

KATTEN MUCHIN & ZAVIS, et al., Defendants.

Civil Action No. 94–2286 (JR).

United States District Court, District of Columbia.

June 24, 1996.

Abbey B. Hairston and Adrian V. Nelson II, Alexander, Aponte & Marks, L.L.P., Silver Spring, MD, for Plaintiff.

Deborah A. Folloni, Michael A. Warner, Seyfarth, Shaw, Fairweather & Geraldson, and Michele A. Roberts, and Rochon and Roberts, Washington, DC, for Defendants.

## MEMORANDUM

ROBERTSON, District Judge.

Before the court are defendants' motion for judgment as a matter of law, or in the alternative, for a new trial or remittitur, and plaintiff's motion for equitable relief.

### 1. Defendant's motion

█ Plaintiff is an African–American lawyer. He was hired in 1992, in part because of his race, to do bankruptcy work at Katten, Muchin & Zavis's Washington, D.C. office. He was well qualified for that work. Nevertheless: (i) his starting salary was less than the average salary of white associates having similar seniority and expertise; (ii) a white associate from Katten, Muchin's Chicago office was given bankruptcy work originating in the D.C. office for which plaintiff was qualified; (iii) plaintiff "fell between the cracks" when he first became eligible for partnership, and his name was not considered with those of white lawyers in the firm's evaluation process and (iv) he was again overlooked when it was time for his annual pay adjustment in 1994 and did not receive the raise given to white associates until he asked for it. Those facts were established by plaintiff's case-in-chief and were sufficient to make out a prima facie case of disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Katten, Muchin & Zavis introduced evidence of legitimate, nondiscriminatory reasons for what plaintiff saw as discrimination: (i) that the starting salary was set by the marketplace; (ii) that the Chicago associate had previously worked with the client and on the D.C. matter; (iii) that plaintiff was indeed "considered" for partnership, by his department head, who decided not to send his name forward; and (iv) that plaintiff's 1994 salary was adjusted promptly, and to his satisfaction, as soon as the oversight was brought to the firm's attention. The jury evidently rejected the law firm's nondiscriminatory reasons. That rejection permits a finding of racial discrimination, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993); *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995).

The jury's verdict was not irrational or unsupported by the record, and defendant's motion for judgment as a matter of law must be denied.

█ As for the punitive damages award: Where, as here, the evidence supports a finding of racial discrimination, "[n]o additional evidence is required" to support an award of punitive damages. *Barbour v. Merrill, supra*, 48 F.3d at 1277. Although trial courts have discretion whether or not to instruct on punitive damages, I find it impossible after *Barbour* to discern the space in which that discretion could be exercised on the facts of this case. The $1.5 million amount of the punitive damage award cannot be said to be unrelated to the jury's compensatory award of $1 million and, on a record establishing that Mark Dombroff, the former partner who had hired plaintiff, earned $950,000 in his last year with the firm and that Vincent Sergi, plaintiff's department head, earned $550,000 per year, it is not excessive and does not offend due process. *See TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

### 2. Equitable relief

█ Plaintiff is eligible for back pay prior to October 24, 1994, the date of his discharge, on the basis of the jury's finding of discrimination with respect to his starting salary and his 1994 compensation.[1] Back pay liability is limited to two years prior to the filing of a discrimination charge with the Equal Employment Opportunity Commission (EEOC). *See Bereda v. Pickering*, 865 F.2d 49 (3d Cir.1989). Plaintiff filed his complaint with the EEOC on August 29, 1994. Accordingly, plaintiff's entitlement to back pay begins August 29, 1992. Plaintiff's 1992 annual salary was $5,500 below that of the average white associate of his experience. For the portion of 1992 after August 29, he is entitled to an award of $1820, plus prejudgment interest, *see Barbour v. Merrill, supra*, 48 F.3d at 1278–79.

Although the jury found disparate treatment of plaintiff with respect to his salary for 1994, plaintiff has not shown and does not argue that his 1994 salary *level* was below that of similarly situated white lawyers. He argues, instead, that he is entitled to salary

---

1. The jury was not asked to find whether plaintiff was discriminated against with respect to his 1993 compensation, and no backpay will be awarded for that year.

for the balance of 1994, after his October 25 discharge, and to the bonus that he would have earned had he remained until the end of 1994. Plaintiff also claims entitlement to back pay from the beginning of 1995 until March 22, 1996, the date judgment was entered in this case, and two years of front pay.

 Defendants interpose a legal defense to any award of back pay or front pay after the date of Katten, Muchin & Zavis's unconditional offer to employ plaintiff in Chicago, Los Angeles or New York. The assertion is that that offer operated, under the rule announced in *Ford Motor Co. v. EEOC,* 458 U.S. 219, 227–28, 102 S.Ct. 3057, 3063–64, 73 L.Ed.2d 721 (1982), to toll the accrual of back pay. The *Ford Motor Co.* tolling rule depends, however, upon a finding that the employee's rejection of the offer was unreasonable. *See Fiedler v. Indianhead Truck Line,* 670 F.2d 806, 808 (8th Cir.1982); *Fairhead v. Deleuw, Cather & Co.,* 817 F.Supp. 153, 159–60 (D.D.C.1993). In this case, such a finding is precluded by the jury's verdict of constructive discharge. That finding, by which I am bound, *see Green v. Kinney Shoe Corp.,* 728 F.Supp. 768 (D.D.C.1989) (citing cases), cannot co-exist with a finding that plaintiff unreasonably rejected the transfer offer, and the tolling defense accordingly fails as a matter of law.

Nevertheless, after reviewing the record with due regard for a district court's duty to "fashion [equitable] relief so as to provide a victim of employment discrimination the most complete make-whole relief possible," *Barbour v. Merrill, supra,* at 1278, I find that plaintiff has not sustained his burden of establishing his entitlement to an award of back pay after October 25, 1994, or to any award of front pay. In July 1994, Katten, Muchin decided to close down the insurance practice that had provided work for plaintiff and a number of other lawyers in its Washington office. Between July and November 1994, defections and terminations reduced the number of lawyers in Katten, Muchin's Washington office from 42 to 14. The firm terminated all five of the Washington office associates whose work had been supported by Mark Dombroff's insurance clients but who were left behind by Dom-

broff's departure. Plaintiff had no reasonable expectation of continued employment in Katten Muchin's Washington office after October 1994. It would be "unduly speculative," *see McKnight v. General Motors Corp.,* 973 F.2d 1366, 1373 (7th Cir.1992), to award plaintiff anything for loss of salary after the date of his termination.